**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**United States of America,**

       *Plaintiff,*

**v.**                                                                           **Case No. 3:99-cv-093**
                                                                          **Judge Thomas M. Rose**

**United Technologies Corporation,**

       *Defendant.*

---

**ENTRY AND ORDER FINDING DEFENDANT LIABLE TO THE UNITED STATES FOR PAYMENT BY MISTAKE AND UNJUST ENRICHMENT**

---

This matter is before the Court for determination of Plaintiff's common law claims and Defendant's asserted defense that such claims are foreclosed by issue preclusion. As to issue preclusion, because the Armed Services Board of Contract Appeals determined that Defendant United Technologies Corporation's Best and Final Offer, or BAFO, was not considered cost and pricing data under the Truth in Negotiations Act, or TINA, 10 U.S.C. § 2306(f), the ASBCA ruling has no preclusive effect on the Court's determination of whether the Air Force relied upon the BAFO in a manner that caused unjust enrichment and payment by mistake. As to the common law claims, the Court finds that the Air Force did rely upon United Technologies Corporation's BAFO in a manner causing unjust enrichment and payment by mistake.

**I.     Procedural History**

After a bench trial, this Court found Defendant United Technologies Corporation liable under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)&(2), but found that the Government had suffered limited damages, and ruled that prior litigation conducted before the Armed Services Board of Contract Appeals precluded the Government from raising its common law claims. *Untied States v. United Technologies Corp.*, 2008 WL 3007997 (S.D. Ohio Aug. 1, 2008).  Both parties appealed this Court's decision.

An appellate panel affirmed the ruling that Defendant had violated the False Claims Act, but ruled that the Government's common law claims were not precluded by prior litigation before the Armed Services Board of Contract Appeals, disagreed with this Court's valuation of warranties, disallowed year-to-year off-sets to damages and ordered this Court to find and account for the fair market value of the engines the Air Force received when determining damages. *United States v. United Technologies Corp.*, 626 F.3d 313 (6th Cir. 2010).  On remand, this Court ordered the parties to brief the questions opened by the appellate ruling on claim preclusion, namely, whether the Government's common law claims were barred by issue preclusion and, if not precluded, whether the Government had established Defendant was liable on these claims.  These questions are now ripe

for decision.[1] Familiarity with the factual background established in the prior ruling of this Court and that of the United States Court of Appeals for the Sixth Circuit is presumed.

**II.    Issue Preclusion**

Defendant United Technologies asserts that issue preclusion prevents this Court from finding that the Air Force relied upon United Technologies' BAFO in a manner causing mistaken payment and unjust enrichment.  Resolution of United Technologies' assertion will require a review of the procedural history of the case United Technologies claims precludes this Court from resolving issues before it.

**1.    ASBCA and Federal Circuit Litigation**

---

[1] The Court ordered the parties to file briefs in accordance with Local Rule and the Court's General Order No. 1, which the Government obliged, but Defendant did not. Because of the time-sensitivity of the case, the Court will not force Defendant to re-craft his brief; however, counsel is expected to conform future filings to Local Rule. *Morgan v. Bill Vann Co., Inc.*, 2011 WL 6056083, *1 (S.D. Ala. 2011)

While the Court has reviewed the entirety of Defendant's filings, that does not save Defendant from its self-imposed sanction: "verbosity is often inversely proportional to clarity." *Imperial Const. Management Corp. v. Laborers Intern. Union of North America Local 96*, 1990 WL 139052, *1 (N.D. Ill. 1990) (citing *United States v. Keplinger*, 776 F.2d 678, 683 (7th Cir. 1985) ("excess verbiage ... [makes it] far more likely that meritorious arguments will be lost amid the mass of detail")).

The Court possesses the power to sanction Defendant's law firm for future transgressions. *Glass v. IDS Financial Services, Inc.*, 137 F.R.D. 262 (D. Minn. 1991).  Additionally, "should [Defendant] fail to comply with page limits in any future filing in this matter, the Court [reserves the right to] disregard any pages in excess of the page limit." *Vega v. United States*, 2011 WL 6014853, *5 W.D. Wash. 2011); see also *United States v. Hernandez*, 2011 WL 4056044 (D. Hawai'i 2011). *Beatty v. Township of Elk*, 2010 WL 1493107, *4 n.2 (D.N.J. 2010). *Swanson v. United States Forest Serv.*, 87 F.3d 339, 345 (9th Cir.1996).  This is because "disregard of the local rules of practice wastes judicial resources and prejudices those parties who follow the rules." *Hansen v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 993264, *1 n.1 (D. Nev. 2012).

The case that United Technologies asserts precludes this Court from ruling on whether the Government relied upon the BAFO in a manner that caused damages began in the Armed Services Board of Contract Appeals, or ASBCA or "Board," where the Government asserted that United Technologies violated the Truth in Negotiations Act, or TINA, 10 U.S.C. § 2306a. TINA requires defense contractors to provide the Government with accurate cost and pricing data prior to being awarded contracts that exceed certain monetary thresholds.

In its initial decision, the ASBCA considered and rejected the Government's argument that the BAFO itself constituted cost or pricing data under TINA. Indeed, the Board expressly disclaimed making any ruling regarding the BAFO:

> We conclude that the government's claims...based upon BAFO misstatements or inaccuracies are not cognizable under TINA since a BAFO is not cost or pricing data. Whether any such purported BAFO defect may be remediable under other contract clauses, procurement regulations or statutes we express no opinion.

*Appeal of United Techs. Corp.*, 04–1 BCA P 32556, 2004 WL 483216 (A.S.B.C.A. Feb. 27, 2004). The Board agreed with the Government, however, that United Technologies used cost and pricing data to create the BAFO, and that the Government relied upon this BAFO cost and pricing data to its detriment. *Id.* United Technologies petitioned the Board to reconsider whether the Government relied upon the BAFO cost and pricing data, but no party challenged the determination that the BAFO itself was not cost or pricing data under TINA.

The Board granted United Technologies' petition to reconsider the question of reliance on cost and pricing data, and, while the Government urged the Board to reconsider the determination that the BAFO was not cost or pricing data, the Board only made the additional findings that the Government did not rely upon the cost and pricing data used to create the BAFO, and that the Air

Force did rely upon the material acquisition process known as "competition," implicitly leaving unchanged all other findings. *ASBCA Reconsideration*, 05–1 BCA P 32860, 2005 WL 147601 (A.S.B.C.A. Jan.19, 2005) ("We make additional findings...").

The Government appealed this decision to the Federal Circuit. While the Government argued strenuously in its briefs and at oral argument before the Federal Circuit that the BAFO was cost and pricing data and that the Government had relied upon it, the Federal Circuit did not touch upon this question, instead affirming the ASBCA reconsideration decision. *Wynne v. United Techs. Corp.*, 463 F.3d 1261 (Fed. Cir. 2006).

Now United Technologies repeatedly depicts the procedural history before the ASBCA and the Federal Circuit as if they had ruled that the Air Force relied upon competition alone, to the exclusion of all other possible factors, in awarding the fighter engine contract. This was not the case. Moreover, United Technologies ignores the fact that the BAFO was not before the Federal Circuit in any event.

The Court additionally notes that prior to the ASBCA reconsideration, the parties' positions here were reversed, with United Technologies arguing that the ASBCA initial decision was not determinative of the issues before this Court, and the Government asserting that they were. Now, with the ASBCA having reversed its decision as to whether the Air Force relied upon the cost and pricing data used to create the BAFO, the opposite is true. Having described the procedural history of the case that United Technologies asserts should preclude the determination of issues otherwise before this Court, the Court will identify the standard for resolving United Technologies' assertion, and then apply the facts of this case to that standard.

**2.     Issue Preclusion Standard and Analysis**

In *Hammer v. I.N.S.*, 195 F.3d 836 (6th Cir. 1999), the Sixth Circuit enumerated five elements required for collateral estoppel to apply:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Id.* at 840 (cf. *Kosinski v. C.I.R.*, 541 F.3d 671, 675 (6th Cir. 2008) (identifying four factors) (quoting *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003)).

**a.     Whether the Issue Before the Court is Identical to That Resolved Before the ASBCA**

The issue before this Court is not identical to the issue that was before the ASBCA. The question before this Court is whether the Air Force relied upon the BAFO that was submitted to it. The question before the ASBCA, in contrast, was whether the Air Force relied upon cost and pricing data that was used to create the BAFO and which was "specific[ally] identified" to the Air Force, but which was never actually submitted, never inspected, and thus not relied upon. *United States v. United Technologies Corp.*, 2008 WL 3007997, *5 (S.D. Ohio 2008), see also ASBCA initial decision finding 16.

Indeed, the ASBCA expressly left the question unresolved:

> We conclude that the government's claims...based upon BAFO misstatements or inaccuracies are not cognizable under TINA since a BAFO is not cost or pricing data. Whether any such purported BAFO defect may be remediable under other contract clauses, procurement regulations or statutes we express no opinion.

*Appeal of United Techs. Corp.*, 04–1 BCA P 32556, 2004 WL 483216 (A.S.B.C.A. Feb.27, 2004).

The Sixth Circuit, likewise noted this disavowal. 626 F.3d at 325 (6th Cir. 2010).

**b.     Whether the Issue was Actually Litigated and Decided in the Prior Action**

Because the BAFO was determined not to be cost or pricing data under TINA, it was not before the ASBCA, and reliance upon it was not decided. While United Technologies points to how the Government attempted to litigate the question when the ASBCA reconsidered its decision and when the United States Court of Appeals for the Federal Circuit reviewed the matter, there was never any decision regarding it, save the initial determination that it was not cost or pricing data under TINA.

**c.     Whether the Resolution of the Issue Was Necessary and Essential to a Judgment on the Merits in the Prior Litigation**

Because the question of reliance on the BAFO was not decided by the ASBCA, this element fails as well.

**d.     Whether the Party to Be Estopped Was a Party to the Prior Litigation**

The party United Technologies seeks to estop was a party in the prior litigation.

**e.     The Party to Be Estopped Had a Full and Fair Opportunity to Litigate the Issue**

The United States did not have an opportunity to litigate the issue before the ASBCA because the ASBCA determined that the BAFO was not cost or pricing data under TINA.

Because the presence of all five elements are required for issue preclusion to bar litigation of a question, and because only one is present here, United Technologies' issue preclusion defense fails. The Court will now state the law relevant to the Government's common law claims and make findings of fact.

**III.    Unjust Enrichment**

Normally, "[t]he elements of a federal common law claim of unjust enrichment brought by the Government are: (1) the Government had a reasonable expectation of payment; (2) [the defendant] should reasonably have expected to pay; or (3) society's reasonable expectations of person and property would be defeated by nonpayment.'" *United States v. Rogan*, 459 F. Supp. 2d 692, 728 (N.D. Ill. 2006) aff'd, 517 F.3d 449 (7th Cir. 2008) (citations omitted). This paradigm can be inverted when there is a reasonable expectation of repayment: "This theory is often used to recover government monies which are wrongfully obtained." *United States v. Houston*, 2011 WL 4899983, 7 (M.D. Tenn. 2011). See, e.g., *United States ex rel. Wall v. Circle Const., LLC*, 700 F. Supp. 2d 926, 939 (M.D. Tenn. 2010) (finding defendant "was unlawfully enriched by its receipt of contractual payments from the United States"); *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir.1999) (United States could recover amount Medicare overpaid to supplier of goods under theory of unjust enrichment).

**A.  Contractual Bar**

United Technologies claims that the fact of the existence of a contract between the United States and United Technologies precludes a claim of unjust enrichment. See Doc. 422 at 5 quoting Restatement (Third) of Restitution & Unjust Enrichment § 2 cmt. c (2011) ("the parties own definition of their respective obligations – assuming the validity of their agreement by all pertinent tests – takes precedence over the obligations that the law would impose in the absence of agreement."). The text of the rule, however, explains that it is not merely the existence of a valid contract that serves to defeat a quasi-contractual remedy but rather the existence of a valid contract that includes "within its scope" the matter in dispute.  See Restatement (Third) of Restitution &

Unjust Enrichment § 2(2) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.").

Defendant correctly points out to the Court that:

> the existence of a valid and written contract governing a particular subject matter precludes recovery in quasi-contract for events concerning the same subject matter.

Doc. 422 at 8 (citing *Harry W. Applegate, Inc. v. Stature Elec., Inc.*, 275 F.3d 486, 489 (6th Cir. 2001)). *Harry W. Applegate, Inc. v. Stature Elec., Inc.*, however, was a case were Plaintiff sued for failure to pay commissions for sales made after the termination of a contract where the contract expressly stated that there would be no post-contract-termination commissions paid. United Technologies points to no such specific provision in this case, instead asserting broadly, "it is undisputed that a contract governs the relationship between the parties here...." Doc. 422 at 8. As United Technologies has found no room in its 57-page *magnum opus* to bring to the Court's attention a contract provision that would foreclose an unjust enrichment claim, the Court concludes that there is none.

Because the rule pertains only to "matters in dispute" that are "within the scope" of the contract, there must be something in the contract that expressly governs the conduct that is the subject of the inequitable conduct at issue before the existence of the contract will be found to prevent the assertion of quasi-contractual claims for payment by mistake or unjust enrichment for that inequitable conduct. *Thomas Marker Constr. Co. v. Wal-Mart Stores, Inc.*, 2008 WL 4279860, *21 (S.D. Ohio Sept. 15, 2008) ( "a party to an express agreement may not bring a claim for unjust enrichment when the express agreement contains provisions governing the alleged inequitable conduct of the other party.") (applying Ohio law).  In this case, while there was a signed contract

governing the parties' rights and obligations concerning performance, the contract has no provision purporting to govern the parties' rights and obligations with respect to the false statements made in BAFO Exhibit 3.8.1 during the negotiation of the contract.

The only provision in the contract that concerns the parties' rights and obligations for conduct during the negotiations phase, the phase during which United Technologies made its misrepresentation in BAFO Exhibit 3.8.1, was the TINA clause. The ASBCA ruled that the BAFO did not fall within TINA's definition of "cost or pricing data." In light of this, the United States has now waived its breach of contract claim, conceding that it has no contractual remedy for conduct relating to misstatements made in BAFO Exhibit 3.8.1 during contract negotiations. See *United States v. Applied Pharm. Consultants, Inc.,* 182 F.3d 603 (8th Cir. 1999) (where contract was ambiguous and did not adequately cover situation, government properly waived breach of contract claim and proceeded on an unjust enrichment claim).

The only question, then, is whether the United States relied upon the BAFO and its exhibits in a manner that caused damages. In the instant case, the Air Force approved inflated BAFO engine prices based on misrepresentations in BAFO Exhibit 3.8.1 and, as a result, paid inflated engine prices in Fighter Engine Contracts I and II and agreed to revised prices higher than it would have paid had United Technologies calculated its engine prices as it asserted it had in BAFO Exhibit 3.8.1. See Doc. 397, at 9-13. The Court's findings relevant to this question were affirmed by the Sixth Circuit:

> Pratt submitted its best and final offer in December 1983.
>
> As part of this final offer, Pratt submitted a document (Exhibit 3.8.1) that explained the company's cost estimates and responded to the Air Force's questions. Exhibit 3.8.1 contained three false statements, all designed to drive up the prices for split-award

> contracts and to discourage the Air Force from splitting up the work. One: Pratt said that it had used the most recent inflation forecasts to calculate the not-to-exceed prices when it had used a different inflation index. Two: in preparing its cost estimates, Pratt said that it had applied a "decrement factor"—an estimate of how much the engine prices would decrease based on Pratt's prior negotiations with engine-parts suppliers—even though Pratt had not factored decrement data into the final offer. Three: Pratt said that it had used the most current engine configurations to calculate its prices, even though it had relied on an earlier engine model without accounting for engine components that did not go into the updated engine. The method to the scheme was to drive up the prices for split-award contracts, then provide a variation-in-quantity formula to reduce prices if the Air Force awarded a greater percentage of the engines to Pratt. Pratt does not dispute any of these facts.
>
> Based on Pratt's and GE's proposals, and despite Pratt's efforts to discourage the Air Force from splitting the work, the Air Force chose to exercise a one-year, split-award option for the first year of the FEC and executed the contract with Pratt and GE. The contract allowed the Air Force to exercise 1–year, 3–year or 5–year options, the 1–year option allowing the Air Force to determine its engine quantities for one year, the 3–year option allowing the Air Force to determine its engine quantities for three years, and so on. The contract breaks each year into FY and FEC terms, with FY85 for example corresponding with FEC I and FY86 corresponding with FEC II. The contract obligated the Air Force to purchase at least 25 engines from Pratt in FEC I, and at least 100 engines from Pratt for each of the remaining five years.

*United States v. United Technologies Corp.*, 626 F.3d 313, 316-17 (6th Cir. 2010).

The Sixth Circuit went on to affirm this Court's ruling that the contract and the amendments to it accepted during the Calls for Improvements process were the products of United Technologies' original fraud in BAFO Exhibit 3.8.1.  See *United States v. United Tech. Corp*., 626 F.3d 313, 320 (6th Cir. 2010) (as amended Jan. 24, 2011) (Calls for Improvements happened "only because the Air Force entered into the contract based on fraud in the first place.").  The Sixth Circuit has also affirmed this Court's ruling that the contracts were the direct product of fraud: "It may be the case,

to be sure, that not every contract or unjust enrichment claim involves fraud but to describe these allegations is to show that they involve fraud." *Id.* at 323.

**B.     Reliance On BAFO Exhibit 3.8.1**

United Technologies' third argument against the United States' equitable claims of payment by mistake and unjust enrichment is that the United States did not prove reliance on BAFO Exhibit 3.8.1. The Court finds that the Government has shown that it relied upon United Technologies' false statements causing payments mistakenly made, unjustly enriching United Technologies.

The Air Force told United Technologies it would not accept unexplained lump sum reductions in the BAFO. See PX410 at PRU001- 3155 ("Lump sum reductions to price will not be accepted without fully supporting rationale and tracking from the initial proposal."). BAFO Exhibit 3.8.1 contained the required supporting rationales and the Air Force's official Record of Acquisition Action unambiguously refers to these supporting rationales' explanations and the role that they played in the Air Force's official determination that United Technologies' prices could be accepted as fair and reasonable:

> The BAFO contained responses to these comments [the Contractor Inquiries] in sufficient detail to allow [the Air Force Evaluation Team] full visibility into the cost impact of these responses with supporting rationale to justify the Offeror's treatment of each comment in the BAFO.
>
> * * *
>
> Based on the discussions herein[2] . . . the contact prices are considered to be fair and reasonable.

 See Record of Acquisition Action (PX1079 at AFR001-3653 - AFR001-365).

---

[2] The "discussions herein" accepted as fact United Technologies' fraudulent assertions in Exhibit 3.8.1.

-12-

Witnesses' testimony at trial demonstrated that the Air Force read and relied upon BAFO Exhibit 3.8.1 to find UTC's prices fair and reasonable. Gary Hansman, the Air Force contracting officer, and a signer of the Record of Acquisition Action, testified that he had personally reviewed BAFO Exhibit 3.8.1 and found it important "because it explained the differences between the initial proposal [and] the BAFO." (Doc. 346 at 25-26, Transcript of Proceedings Held On 10-25-04 at 1165:12-1166:18).

The Record of Acquisition Action, written by Richard Wyatt, shows that he reviewed the supporting rationales found in BAFO Exhibit 3.8.1. That the Record of Acquisition Action indicates that the false supporting rationales were accepted by the Air Force and were a basis for finding UTC's prices fair and reasonable allows the Court to conclude that Wyatt and Hansman reviewed and relied on BAFO Exhibit 3.8.1.

### IV. Payment by Mistake

The Government seeks to recover excess amounts paid under a "payment by mistake" theory of recovery. As the Supreme Court has recognized, "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." *United States v. Wurts*, 303 U.S. 414, 415 (1938); see also *United States v. MacPhail*, 149 Fed. App'x 449, 454 (6th Cir. 2005) (there is a "long-standing policy that the Government should not be harmed by the actions of its agents in incorrectly disbursing funds from the public fisc when the error arose from a mistake of fact"). Indeed, "'[i]t is well established that parties receiving monies from the Government under mistake of fact or law are liable . . . to refund them, and that no specific statutory authorization upon which to base a claimed right of set-off or an affirmative action for recovery of these monies is necessary.'" *United States v. The Estate of Williams Cole*, 620 F. Supp. 126, 128-29 (W.D. Mich.

1985) (quoting *Disilvestro v. United States*, 405 F.2d 150, 155 (2d Cir. 1968)).  See also *United States v. Guy*, 2006 WL 1874709, 8 (N.D. Ohio 2006).  While payment by mistake does not necessarily entail fraud on the part of a defendant, when payment by mistake is premised upon a mistaken belief in defendant's fraudulent assertions, it duplicates a claim for unjust enrichment in those circumstances. *United States v. Bedi*, 2011 WL 4974861, *9 (S.D. Ill. Oct. 18, 2011).  When unjust behavior on the part of a defendant is present in the cause of a payment by mistake claim, "Payment under mistake of fact and unjust enrichment are essentially duplicative and seek the same relief."  *United States v. Albinson*  2010 WL 3258266, *18 (D.N.J. Aug. 16, 2010).

The only causation required in claims of payment by mistake is causation in fact. *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1344 (E.D. Mo. 1996) (citing *Western Casualty & Sur. Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo. Ct. App. 1982))(" that but for her mistake of fact, she would not have paid.")).   In this case, the government alleges that it paid United Technologies in reliance upon a mistake of fact—the Government believed that the BAFO submitted at the beginning of the acquisition process was current, complete, and accurate. The Government asserts that, had it known the facts, it would not have agreed to pay the amounts it did and that it is entitled to recover them.

United Technologies emphasizes that "payment by mistake requires proof of reliance and causation." Doc. 420 at 13.  The Court finds that the Air Force both relied upon the BAFO, including exhibit 3.8.1 and that it caused the Air Force to pay United Technologies more than it should have.  This finding does not disagree with the finding of the ASBCA and the United States Court of Appeals for the Federal Circuit: The Air Force did not rely upon the cost and pricing data used to create the BAFO.  Rather than rely upon the BAFO cost and pricing data, the Air Force

relied upon the BAFO itself, including exhibit 3.8.1, causing it to pay more than it should have for fighter engines from United Technologies.  While the Air Force found that competition had succeeded in lowering the prices it was paying for fighter engines, the price would have been even lower had it been provided with an accurate estimation of the cost of components to assemble the engine.

While the ASBCA found that "the A[ir] F[orce] did not exercise these [fiscal year 1986 through fiscal year 1990] options at the same terms and conditions offered by [Pratt] in the BAFO for these options," this is not to say that the fiscal year 1986 through fiscal year 1990 ultimate terms would not have been lower had Pratt provided accurate and current estimates in the BAFO.

**IV.  Conclusion**

Because the Armed Services Board of Contract Appeals determined that Defendant United Technologies Corporation's Best and Final Offer, or BAFO, was not considered cost and pricing data under the Truth in Negotiations Act, the ASBCA ruling has no preclusive effect on the Court's determination of whether the Air Force relied upon the BAFO in a manner that caused unjust enrichment and payment by mistake.  Because the Air Force did rely upon United Technologies Corporation's BAFO in a manner causing unjust enrichment and payment by mistake, United Technologies is liable on the Government's common law claims.

The Parties are ordered to file simultaneously briefs concerning the amount of damages proven at trial by Friday, September 14, 2012, with responses due by Friday, October 5, 2012 and replies due by Friday, October 26.  Filings not in accordance with Local Rule and the Court's General Order will not be considered.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, June 18, 2012.

                                                                           s/Thomas M. Rose
                                                          _____
                                                                    THOMAS M. ROSE
                                                        UNITED STATES DISTRICT JUDGE